# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

KATHERINE LOUISE CASSON,

        Plaintiff,

vs.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

        Defendant.

No. C15-4016-LTS

**MEMORANDUM OPINION AND
ORDER ON REPORT AND
RECOMMENDATION**

---

## I.     INTRODUCTION

This case is before me on a Report and Recommendation (R&R) by the Honorable Jon Stuart Scoles, Chief United States Magistrate Judge.  *See* Doc. No. 16. Judge Scoles recommends that I affirm the decision of the Commissioner of Social Security (the Commissioner) denying plaintiff Katherine Casson Social Security disability benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. § 401 et seq. (Act).   Casson filed timely objections (Doc. No. 17) to the R&R and the Commissioner filed a timely response (Doc. No. 18).   The procedural history and relevant facts are set forth in the R&R and are repeated herein only to the extent necessary.

## II.     APPLICABLE STANDARDS

### A.     *Judicial Review of the Commissioner's Decision*

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole."  *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security

as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645. The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Wester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v.*

*Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even if the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

**B.    Review of Report and Recommendation**

A district judge must review a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error"). As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when

although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). However, a district judge may elect to review an R&R under a more-exacting standard even if no objections are filed:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 150 (1985).

### III. THE R&R

Judge Scoles reviewed the ALJ's evaluation of the medical evidence, the ALJ's credibility determination and the ALJ's formulation of Casson's residual functional capacity (RFC). With regard to the medical evidence, Judge Scoles found:

> Having reviewed the entire record, and considered the ALJ's discussion of the objective medical evidence and review of Casson's treatment history, the Court finds the ALJ properly considered and weighed the opinion evidence provided by Dr. Garred. Specifically, the ALJ determined that Dr. Garred's opinions were entitled to "little weight," and addressed inconsistencies between Dr. Garred's opinions and the record as a whole. Therefore, the Court concludes that the ALJ properly considered and applied the factors for evaluating a treating source opinion, and properly determined that Dr. Garred's opinions were entitled to only "little weight." *See Hamilton*, 518 F.3d at 609. The ALJ also thoroughly explained his reasons for granting Dr. Garred's opinions "little" weight. *See Cline*, 771 F.3d at 1105 ("[L]ess weight may be given to the treating physician's opinion, but the ALJ must always 'give good reasons' for doing so. *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (quoting 20 C.F.R. § 404.1527(c)(2))."). Accordingly, even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

4

Doc. No. 16 at 20.

Addressing Casson's argument that the ALJ improperly assessed her credibility,

Judge Scoles described the applicable standards as follows:

> When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). An ALJ should also consider a "a claimant's work history and the absence of objective medical evidence to support the claimant's complaints[.]" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (citing *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000)). The ALJ, however, may not disregard a claimant's subjective complaints "solely because the objective medical evidence does not fully support them." *Renstrom v. Astrue*; 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting *Wiese v. Astrue*, 552 F.3d 728, 733 (8th Cir. 2009)).

> Instead, an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole." *Wildman*, 596 F.3d at 968; *see also Finch*, 547 F.3d at 935 (same); *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."). If an ALJ discounts a claimant's subjective complaints, he or she is required to "make an express credibility determination, detailing the reasons for discounting the testimony, setting forth the inconsistencies, and discussing the *Polaski* factors." *Renstrom*, 680 F.3d at 1066 (quoting *Dipple v. Astrue*, 601 F.3d 833, 837 (8th Cir. 2010)); *see also Ford*, 518 F.3d at 982 (An ALJ is "required to 'detail the reasons for discrediting the testimony and set forth the inconsistencies found.' *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)."). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) (citing *Pena v. Chater*, 76 F.3d 906,

908 (8th Cir. 1996)); *see also Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (providing that deference is given to an ALJ when the ALJ explicitly discredits a claimant's testimony and gives good reason for doing so); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination."). "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Vossen v. Astrue*, 612 F.3d 1011, 1017 (8th Cir. 2010).

Doc. No. 16 at 20-22. Judge Scoles noted that the ALJ pointed out inconsistencies between the objective medical evidence and Casson's allegations of disability. *Id.* at 22. Specifically, Judge Scoles quoted the portion of the ALJ's ruling in which the ALJ explained that Casson appeared to respond well to medicine and had activities of daily living, such as driving, that are inconsistent with the vision problems she described. Judge Scoles stated:

> In his decision, the ALJ thoroughly considered and discussed Casson's treatment history, the objective medical evidence, her functional restrictions, activities of daily living, and use of medications in making his credibility determination. Thus, having reviewed the entire record, the Court finds that the ALJ adequately considered and addressed the *Polaski* factors in determining that Casson's subjective allegations of disability were not credible. *See Johnson*, 240 F.3d at 1148; *see also Goff*, 421 F.3d at 791 (an ALJ is not required to explicitly discuss each *Polaski* factor, it is sufficient if the ALJ acknowledges and considers those factors before discounting a claimant's subjective complaints); *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered. *Brown v. Chater*, 81 F.3d 963, 966 (8th Cir. 1996)."). Accordingly, because the ALJ seriously considered, but for good reasons explicitly discredited Casson's subjective complaints, the Court will not disturb the ALJ's credibility determination. *See Johnson*, 240 F.3d at 1148. Even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

Doc. No. 16 at 23.

Finally, Judge Scoles set out the correct standard regarding the ALJ's duty to assess a claimant's RFC and, if needed, to develop the record further. *Id*. at 24. Judge Scoles reviewed the ALJ's finding that Casson could perform a full range of light work, and stated:

> [T]he ALJ properly considered Casson's medical records, observations of treating and non-treating physicians, and Casson's own description of her limitations in making the ALJ's RFC assessment for Casson. *See Lacroix*, 465 F.3d at 887. Furthermore, the Court finds that the ALJ's decision is based on a fully and fairly developed record. *See Cox*, 495 F.3d at 618. Because the ALJ considered the medical evidence as a whole, the Court concludes that the ALJ made a proper RFC determination based on a fully and fairly developed record. *See Guilliams*, 393 F.3d at 803; *Cox*, 495 F.3d at 618. The Court concludes that Casson's assertion that the ALJ's RFC assessment is flawed is without merit.

Doc. No. 16 at 26.

## IV. DISCUSSION

Casson objects to Judge's Scoles' findings regarding the medical evidence, Casson's credibility, and the ALJ's RFC.[1]  I will review those findings de novo.

## A. Medical Evidence

Judge Scoles summarized the relevant medical evidence in his R&R. Doc. No. 16 at 5-10. I find no errors in his recitation of the medical history and it is therefore incorporated by reference. In short, it is undisputed that Casson suffers from

---

[1] Casson's objections are divided into two parts, but those two parts address all three issues. Doc. No. 17.

myasthenia gravis. Among other things, myasthenia gravis can cause muscle weakness and eye problems.

In the course of her treatment, Casson regularly saw John Garred, Jr., M.D., a family practice physician, and James Case, M.D., a neurologist. Throughout the course of his treatment, Dr. Garred regularly made conclusory statements that Casson would be unable to return to work. *See, e.g.,* AR 489 (treatment note from July 9, 2013, stating "She . . . probably is not ever going to be able to work again."). On July 11, 2013, Dr. Garred wrote a letter in which he stated that Casson:

> recently developed myasthenia gravis that was diagnosed in January, 2013. The patient noted that she was starting to have diplopia and gradually got bad enough that she couldn't focus on the computer. When she came in here, it looked like she had muscle weakness and fatigability which precipitated us getting a myasthenia panel and EMG studies. All these studies corroborate a diagnosis. . . The problem is she is not going to be able to do any lifting, carrying, standing, walking, or sitting for any period of time. . . The natural history of this disease process is that a third of people get better, a third of them will stay the same, and a third will get worse. Obviously, she is at the present time not getting any worse, but she is not getting any better and is not going to be able to return to her computer job due to her vision problems and fatigability. . .

AR 451-52. Dr. Garred provided a substantially-similar letter dated October 30, 2013. AR 531. Dr. Case opined similarly. AR 521.

However, on July 18, 2013, Casson was seen by Pariwat Thaisetthawatkul, M.D., and resident Sreekanth Koneru, M.D. Dr. Koneru observed that "her symptoms are well controlled except for [mono-ocular] blurry vision when she tries to read." AR 459. Dr. Thaisetthawatkul stated that "the ongoing problems she continues to have are likely NOT related to myasthenia gravis." AR 460 (emphasis in original). Dr. Thaisetthawatkul also stated that Casson's weakness and fatigue were likely caused by sleep issues.

Casson also saw Beth Bruening, M.D., regarding her eyesight. Dr. Bruening concluded that some of Casson's vision problems were unrelated to her myasthenia gravis. AR 537. Dr. Bruening suggested the issues could be corrected with a prescription adjustment. *Id.* Additionally, Dr. Garred's treatment notes conflict with his written assessments for third parties. *Compare*, *e.g.*, AR 531 (Dr. Garred's letter stating Casson is unable to work) with AR 496-98 (his treatment notes from August 13, 2013, stating that he found Casson's neurological conditions to be "normal," that she suffered from unspecified muscle weakness and that her eyesight "may improve with more therapy.") Finally, on July 14, 2014, Dr. Case opined that Casson's myasthenia gravis seemed to be well-controlled and expressed doubt that Casson's fatigue was related to her primary condition. AR 719.

### 1. The ALJ's Reasoning

The ALJ stated:

> The objective findings from the claimant's treatment records and examinations do not fully support her allegations. The records consistently show response to treatment, the absence of frank symptoms of diplopia or lid drooping, evidence that her vision problems were related more to cataracts that were resolved with eyeglasses, and no evidence she was suffering from any neurological problems in the extremities since all exams showed normal gait.

AR 29. The ALJ found that Dr. Garred's conclusions were inconsistent with both his treatment notes and the conclusions of Dr. Thaisetthawatkul and Dr. Bruening. Thus, the ALJ stated: "I am unable to credit the opinions in the medical source statements issued by her treating sources since they all indicate exertional limitations that are not consistent with the record as a whole and, therefore, those opinions are given little weight." AR 30.

### 2. Analysis

Casson argues that the ALJ improperly gave little weight to Dr. Garred's opinion. She contends that the opinion is entitled to controlling weight because Dr. Garred is a treating source and his findings are consistent with the medical record as a whole. Having carefully reviewed the record, I find that the ALJ provided good reasons, supported by substantial evidence, to discount Dr. Garred's opinion. *See Michel v. Colvin*, 640 F. App'x 585, 592–93 (8th Cir. 2016) ("[w]hen a treating physician's opinion is in conflict with other substantial medical evidence, then the ALJ may afford less weight to that physician's opinion.") (internal citations omitted).

I agree with Judge Scoles that the ALJ's decision includes a thorough and well-reasoned evaluation of the medical evidence, including Dr. Garred's treatment notes. The ALJ articulated specific reasons for discounting Dr. Garred's conclusory opinions, including the fact Dr. Garred often noted that Casson improved on medication, but then included a stock finding that she was unable to work. Additionally, and contrary to Casson's assertion, Dr. Garred's conclusions were contradicted by both Dr. Thaisetthawatkul and Dr. Bruening, as each found that Casson likely suffered from other, treatable, issues (sleep issues and cataracts) that caused some of her symptoms.

The ALJ considered and applied the appropriate factors regarding the evaluation of a treating source opinion. Based on my de novo review, I find that the ALJ's evaluation of the medical evidence is supported by substantial evidence in the record as a whole. I therefore overrule Casson's objection to that portion of the R&R.

### B. The Credibility Assessment

Casson also argues that the ALJ's credibility assessment is not supported by substantial evidence. Specifically, she contends that the ALJ failed to consider her subjective complaints and failed to identify actual inconsistencies in the record.

### 1.    Casson's Subjective Allegations

Casson testified that she gets tired throughout the day.  AR 46.  She stated that she often has to sit and rest while doing routine chores, and normally has to lay down for an hour or more a day.  *Id*.  Casson also testified that she gets blurry vision while reading.  *Id*.  She stated that when she tries to focus her eyesight for a long period of time her muscles become weak, her vision blurs, and her eyes begin to twitch.  *Id*.  Casson also stated that she has a hard time carrying more than five pounds, bending, stooping or using stairs.  AR 47-52.

### 2.    The ALJ's Findings

The ALJ referenced the *Polaski* factors for considering a claimant's credibility and then provided reasons for concluding that Casson's allegations of disabling symptoms were not entirely credible.  AR 24.  Specifically, the ALJ found: (a) Casson's allegations are not supported by the medical record; (b) Casson engaged in activities that are not consistent with her alleged symptoms; and (c) Casson generally responded positively to treatment.  AR 24-30.

### 3.    Analysis

Based on my de novo review, I conclude that the ALJ properly considered the *Polaski* factors and provided valid reasons, supported by substantial evidence, to discount Casson's allegation of debilitating symptoms.  First, as discussed above, the medical evidence does not support Casson's allegations.  While Dr. Garred (and to a lesser extent Dr. Case) made conclusory statements about the extent of Casson's disability, the actual treatment notes do not support Casson's allegations that she is unable to bend or use stairs and is so fatigued that she must lay down for an hour or more a day.  While it is seems undisputed that Casson has issues with her eyesight and blurry vision, both the cause of those symptoms and their severity is uncertain.

Additionally, there is little medical evidence directly linking fatigue and other physical ailments to Casson's severe impairments.

In addition, the ALJ was entitled to consider Casson's failure to follow up for medical testing. *See, e.g., Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000). As set out in the ALJ's decision, both Dr. Thaisetthawatkul and Dr. Case suggested that Casson's fatigue may be caused by sleep apnea, but Casson declined to follow up on that issue. *See, e.g.,* AR 579 (Dr. Case's note indicating that Casson's fatigue is likely a result of sleep apnea). Casson alleges no emotional or psychological reasons for her failure to follow up with regard to possible sleep apnea. Accordingly, the ALJ properly considered this failure in finding her subjective complaints not credible.[2]

---

[2] Casson argues that there is no medical evidence linking sleep apnea to her alleged symptoms. However, as noted above, the record reflects that at least two doctors have suggested that Casson's fatigue is caused by sleep apnea. Accordingly, there is medical evidence that supports the link. Casson's better argument is that she is unable to afford treatment for sleep apnea. However, as noted in the Commissioner's original brief:

> At the threshold, the Eighth Circuit Court of Appeals' precedent makes clear that "[i]t is for the ALJ in the first instance to determine a claimant's real motivation for failing to follow prescribed treatment" and "the fact that [the claimant] is under financial strain is not determinative." *Whitman v. Colvin*, 762 F.3d 701, 706 (8th Cir. 2014). In any event, in declining to pursue testing for sleep apnea, plaintiff told Dr. Case that a prior sleep study had been "nonrevealing"; she did not cite to her pecuniary circumstances (Tr. 578). The ALJ also noted that plaintiff declined electromyography to investigate her alleged leg weakness (Tr. 29; see also Tr. 719). The corresponding medical record does not reveal any claims of financial incapacity (Tr. 719).

Doc. No. 14 at 14-15; *see also Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005) ("[T]here is no evidence Goff was ever denied medical treatment due to financial reasons. Without such evidence, Goff's failure to take pain medication is relevant to the credibility determination."). Similarly, in this case there is no evidence that Casson's financial constraints impaired her ability to seek examination and treatment for sleep apnea.

The ALJ also found that Casson's activities of daily living are not as restricted as might be expected in light of her subjective complaints. For example, the ALJ noted that Casson continues to drive, prepare meals and attend to her personal needs. It is generally true that a claimant's ability to engage in personal activities does not constitute substantial evidence that he or she has the functional capacity to engage in substantial gainful activity. *See, e.g., Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007). However, a claimant's ability to engage in a specific activity (in this case driving) that should be precluded by his or her alleged symptom (in this case vision issues) does cut against the claimant's credibility. *See, e.g., Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir. 1995) (finding that the claimant's ability to engage in household chores was inconsistent with her allegation of disabling knee pain).[3]

Finally, the ALJ noted that almost all of the medical records indicate that Casson responded well to treatment. This is another factor, appropriately cited by the ALJ, that weighs against Casson's subjective complaints of disabling symptoms. *See, e.g., Kisling v. Chater*, 105 F.3d 1255, 1257 (8th Cir. 1997) (holding that an impairment cannot be considered disabling if it can be controlled through treatment or medication). Thus, having carefully reviewed the record, I find that the ALJ appropriately considered the *Polaski* factors and provided good reasons for discrediting Casson's subjective complaints. As such, there is no basis for disturbing the ALJ's credibility determination. *Johnson*, 240 F.3d at 1148. Casson's objection to this portion of the R&R is overruled.

---

[3] As will be discussed further below, one state agency doctor also noted that Casson seemingly sends and receives email.

## C.    The RFC

Casson also argues that the ALJ erred by discounting the opinions of state agency medical consultants and finding that Casson has the RFC to engage in light work.  As Judge Scoles explained:

> Casson argues the ALJ's RFC assessment is flawed.    Casson maintains that the ALJ's RFC assessment is not supported by substantial evidence. Specifically, Casson asserts the ALJ improperly discounted the opinions of the medical expert, Dr. Devere, and the State agency non-examining medical doctors in making his RFC assessment for Casson.  Thus, Casson concludes this matter should be remanded for a new RFC determination based on a fully and fairly developed record.

Doc. No. 16 at 23.[4]  Casson argues that ALJ should have relied upon the testimony of Dr. Devere in finding that Casson only had the RFC to perform sedentary work.  Judge Scoles found that, "[t]he ALJ also properly considered and thoroughly discussed Casson's subjective allegations of disability in making his overall disability determination, including determining Casson's RFC."  Doc. No. 16 at 26.

---

[4] State agency consultant Laura Griffith, M.D., reviewed Casson's file on July 30, 2013.  AR 83-85.  Dr. Griffith noted that Casson continued to improve on medication.  AR 85.  Dr. Griffith stated Casson "continues to drive and provides an internet address suggesting her vision is not functionally limiting. . .  The systemic fatigue she relates is not addressed with neurology. . . The MDIs of bulbar MG and morbid obesity provide the basis of the RFC considering her expected recovery."  AR 85.  Dr. Griffith found that Casson could stand/walk no more than 2 hours, sit about 6 hours, and lift/carry 20 pounds occasionally and 10 pounds frequently.  AR 83-84.  Dr. Griffith stated that Casson could never climb ladders, ropes or scaffolds, and only occasionally climb ramps/stairs, balance, stoop, kneel, crouch and crawl. AR 84.  State agency consultant Jan Hunter, M.D., reviewed the file on August 30, 2013 and reached the same conclusions. AR 105-06.

## 1.    The ALJ's Findings

The ALJ stated:

The State Agency medical consultants concluded that, within 12 months, the claimant's severe impairment, myasthenia gravis, would result in a limitation to a range of work between light and sedentary, i.e. she could lift and carry 20 pounds occasionally 10 pounds frequently, but could stand only 2 hours in an 8-hour workday.  They concluded further that she could sit 6 hours in an 8-hour workday; occasionally climb ramps and stairs, but never ladders, ropes, and scaffolds; and occasionally balance, stoop, kneel, crouch, and crawl. . .   Based on a lack of objective findings of any deficits in the claimant's extremities or any evidence she has suffered from generalized myasthenia gravis, I am unable to credit the opinions of the State Agency medical consultants that the claimant is limited to standing and/or walking for no more than 2 hours and can only occasionally perform postural work activities and, thus, that portion of the opinions is given little weight.   I am finding that she is capable of preforming a full range of light work, which is consistent with the remainder of the medical source statements of the State Agency medical consultants . . .

AR 30.  Based on this RFC, the ALJ determined that Casson could return to her past relevant work.  AR 31.


## 2.    Analysis

I agree with Judge Scoles that ALJ's RFC is supported by substantial evidence. Casson's best argument is that the independent medical expert, Ronald Devere, M.D., limited her to sedentary work and the ALJ improperly discounted that opinion. However, while Dr. Devere recommended a restriction to sedentary work, he admitted that this restriction is not supported by the medical record.  The exchange between the ALJ and Dr. Devere is illuminating:

ALJ: Given the state of the record ... are there enough objective findings in the record to support, you know her, her subjective complaints or allegations to the point that she would be limited say less than a light range of work?

Dr. Devere: I'm giving you the benefit of the doubt and I'd recommend sedentary. There's no evidence based on the record that total ability – cannot a listing and equal not [sic]. You can't go by subjective.

ALJ: Right. But...

Dr. Devere: We have that problem in multiple sources. If you're faced – that's part of the symptoms you go to have more information on fatigue. There has to be subjective evidence and that's –

ALJ: But if I found that she was limited say to sedentary work you feel like there's a sufficient treatment history and in there to hang my hat on to limit her to sedentary level of work?

Dr. Devere: Right now there's no evidence – somebody could put her in light duty, I'm giving benefit of the doubt, give the least amount of work, sedentary . . .

AR 67-68. Thus, Dr. Devere did not testify that the medical evidence supports a finding that Casson is limited to sedentary work. Rather, Dr. Devere suggested such a finding as a result of giving Casson the "benefit of the doubt." The "benefit of the doubt" is not the correct standard for crafting the RFC. Instead, the ALJ's RFC evaluation must be based on all relevant evidence:

> When assessing a claimant's RFC, the ALJ must consider all relevant evidence in the record. *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007). But a claimant's RFC is a medical question, and some medical evidence must support the RFC determination. *Wildman*, 596 F.3d at 969.

*Julin v. Colvin*, 826 F.3d 1082, 1089 (8th Cir. 2016). Here, the ALJ correctly considered all of the evidence, including the relevant medical evidence, in crafting the RFC. The ALJ specifically gave great weight to portions of the state medical agency opinions, other than the specific objection discussed above, as well as to Dr. Thaisetthawatkul's opinion. AR 30 (citing AR 457-61). Upon my de novo review, I

find the ALJ crafted an RFC that is supported by substantial evidence in the record as a whole. Accordingly, Casson's objection to this portion of the R&R is overruled.

## V. CONCLUSION

For the reasons set forth herein:

1. Casson's objections (Doc. No. 17) to the magistrate judge's report and recommendation are **overruled**;

2. I **accept** Chief United States Magistrate Judge Scoles' December 10, 2015, report and recommendation (Doc. No. 16) without modification. *See* 28 U.S.C. § 636(b)(1).

3. Pursuant to Judge Scoles' recommendation:

   a. The Commissioner's determination that Casson was not disabled is **affirmed**; and

   b. Judgment shall enter against Casson and in favor of the Commissioner.

**IT IS SO ORDERED.**

**DATED** this 27th day of September, 2016.

_____
LEONARD T. STRAND
UNITED STATES DISTRICT JUDGE